Chris C. Scheithauer, Bar No. 184798
Kyle R. Bevan, Bar No. 294877
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel: (949) 717-3000
cscheithauer@calljensen.com
kbevan@calljensen.com

Attorneys for Plaintiff The Clements Family Trust

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

THE CLEMENTS FAMILY TRUST,

Plaintiff,

vs.

VIMMIA, LLC, a California limited liability company, AFSHIN "ARDY" RAMINFAR, an individual, and ALEX RAMINFAR, an individual,

Defendants.

Case No.

**COMPLAINT FOR:**
**1. Trademark Infringement;**
**2. False Designation of Origin;**
**3. Common Law Trademark Infringement and Unfair Competition;**
**4. Intentional Interference with Contractual Relations;**
**5. Intentional Interference With Prospective Economic Relations;**
**6. Breach of Contract; and**
**7. Breach of Covenant of Good Faith and Fair Dealing**

**DEMAND FOR JURY TRIAL**

CALL & JENSEN EST 1981

## I. PARTIES

1. Plaintiff The Clements Family Trust ("Plaintiff") is a revocable living trust.

2. Defendant Vimmia, LLC ("Vimmia") is a California limited liability company with a principal place of business in Monterey Park, California.

3. Defendant Afshin "Ardy" Raminfar is an individual residing in Los Angeles County, California. On information and belief, he is a member of Vimmia.

4. Defendant Alex Raminfar is an individual residing in Los Angeles County, California. On information and belief, he is a member of Vimmia.

## II. JURISDICTION AND VENUE

5. The Court has original subject matter jurisdiction over the federal claims that relate to trademark infringement, false designation of origin, unfair competition, and false advertising under 15 U.S.C. §§ 1116 and/or 1121(a) and under 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law under 28 U.S.C. §§ 1338(b) and 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of facts.

6. This Court has personal jurisdiction because Defendants have substantially targeted consumers in California through marketing, advertising, and selling infringing products to consumers in this judicial district and because actual confusion has occurred in the State of California, as alleged below. Defendants continue to make false statements in connection with the sale, advertisement, marketing, and promotion of their goods in California and within this judicial district.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants have extensive contacts with and conduct business within the State of California and this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

CALL & JENSEN EST. 1981

## III. FACTUAL ALLEGATIONS

8. Plaintiff founded Kaveah, LLC ("Kaveah") in 2018.

9. Kaveah markets high-quality girls' clothing for teens.

10. Identical twins and social media personalities Ava and Leah Clements ("Clements twins") model Kaveah's clothing.

11. Kaveah obtained federal trademark registration for KAVEAH in Class 25 for clothing (namely, tee shirts, pants, shorts, sweatshirts, and hats). (Exhibit A is a copy of Reg. No. 6943643, which is incorporated here by reference.)

12. In or about April 2022, Plaintiff and Defendant Vimmia began discussing working together on a brand collaboration for Kaveah. Afshin "Ardy" Raminfar is, on information and belief, Vimmia's managing member and was Plaintiff's primary point of contact with Vimmia. The parties began conducting business together in or about August 2022.

13. The parties never signed a document memorializing their relationship.

14. Plaintiff designed clothing for Vimmia to manufacture.

15. Plaintiff promoted its Kaveah clothing in traditional and social media, modeled primarily by the Clements twins.

16. Vimmia sold Plaintiff's clothing through various distribution channels, including directly to consumers through Kaveah's website storefront and a network of showrooms engaged to book orders with clothing boutiques nationwide.

17. Vimmia paid royalties to Plaintiff for these sales.

18. In September 2024, Vimmia sought to end its relationship with Kaveah.

19. Defendant Alex Raminfar stated that Vimmia and Kaveah could no longer collaborate because "Vimmia does not have the willingness or the financial ability to not only produce the 8,300 pre-sold units as well as the additional 10,000-12,000 units needed to meet the factory and production minimums."

20. Alex Raminfar knew his statements were false when he made them.

21. On the contrary, Vimmia was producing the 8,300 pre-sold units.

CALL & JENSEN EST. 1981

22. Vimmia was also producing the additional 10,000-12,000 units needed to meet factory production minimums.

23. This was the very line of apparel that Kaveah helped design and that the Clements twins modeled for and promoted.

24. What's more, Vimmia rebranded the apparel line from KAVEAH to its own TENLY brand.

25. In other words, Vimmia usurped the orders placed for KAVEAH apparel with the same products, but this time branded as TENLY.

26. The customers who booked those 8,300 units did so on the strength of the KAVEAH brand.

27. Vimmia and the Raminfar brothers did not mention any of this to Plaintiff.

28. Vimmia prepared a letter entitled "Re: Termination of Collaboration Agreement" ("Agreement") dated September 23, 2024, and sent it to Plaintiff. (Exhibit B.) Plaintiff signed the Agreement on October 2, 2024. Defendant Alex Raminfar signed the Agreement on October 7, 2024. The Agreement terminated the working relationship between the Parties effective October 25, 2024.

29. Vimmia agreed to "produce and ship all Fall/Winter 2024 orders as previously agreed," orders for which Plaintiff is entitled to royalties.

30. Plaintiff had the right to "purchase remaining Kaveah inventory at cost," subject to minimum unit restrictions, "until such time as the inventory is no longer in stock or on hand."

31. Vimmia agreed to "no longer use any Kaveah trademarks, save for the sale ofany [*sic*] remaining Kaveah-branded inventory[…]."

32. Vimmia, through Alex Raminfar, agreed it would "provide any unpaid royalties" upon receipt of the 2025 Spring/Summer sample set in Plaintiff's possession.

33. Plaintiff returned the sample set to Vimmia.

34. Unbeknownst to Plaintiff, in furtherance of Defendants' scheme to profit from Plaintiff's efforts, Defendants began communicating to customers and showrooms

CALL & JENSEN EST. 1981

that the KAVEAH brand would be discontinued and rebranded as TENLY.

35. Besides phone calls, Plaintiff has received several written notices of actual confusion, which do not account for others who failed to notify Plaintiff. (Ex. C, D.)

36. As these instances of confusion occur, Plaintiff is helpless because, despite Plaintiff's requests, Defendants refuse to issue a statement correcting any misunderstanding about the relationship between the KAVEAH and TENLY brands.

37. Because Plaintiff does not have the resources to fulfill Kaveah's 2025 Spring/Summer line on its own without the royalties that Defendants have improperly withheld from Plaintiff, Plaintiff's goodwill is now placed in the hands of Defendants. Accordingly, the value of Plaintiff's brand is substantially diminished, its brand identity is stagnant, and it no longer has control over its goodwill, reputation, or ability to move into new markets currently occupied by Vimmia.

38. As a result, Plaintiff's KAVEAH brand has lost traction in the marketplace and cannot fairly compete with Defendants' TENLY brand, which Vimmia has been communicating to the market as the successor brand to KAVEAH.

39. Making matters worse, upon information and belief, Defendant Ardy Raminfar falsely claimed that a liquidator had purchased all of its excess inventory—inventory Plaintiff's KAVEAH brand had the contractual right to purchase.

40. That was false. A boutique clothing store provided Plaintiff with an inventory report listing thousands of those items as "in stock" on December 9.

41. Thus, Defendants withheld the inventory from Plaintiff for the sole purpose of crippling the KAVEAH brand and unfairly strengthening its own brand, TENLY, which directly competes with KAVEAH.

42. Defendants have flooded the market with advertisements that misleadingly used the Clements twins' names and likenesses to promote their own TENLY brand.

43. Defendants have also created their own advertising for the TENLY brand. They have chosen to market their wares using models resembling the Clements twins.

CALL & JENSEN EST. 1981

44. Defendants have not paid royalties owed on previously booked sales not applied to purchasing inventory for May, June, July, and August 2024

45. Defendants have not paid royalties owed for website sales between September 1, 2024, and October 25, 2024.

46. Defendants have not paid royalties owed for wholesale orders from the KAVEAH 2024 Fall/Winter collection, including sales Defendants rebranded as TENLY and made on the strength of the goodwill associated with the KAVEAH brand, with the use of rights of publicity of the Clements twins.

**FIRST CAUSE OF ACTION**

**(Trademark Infringement, 15 U.S.C. § 1114)**

47. Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as is fully set forth herein.

48. Plaintiff owns a valid trademark for KAVEAH that it used exclusively in commerce before Defendants marketed their own TENLY brand using the Clements twins' images and, later, images of a different set of young girls resembling the Clements twins.

49. Defendants' sales, marketing, and advertising of TENLY products are causing confusion in the marketplace and will likely cause more customer confusion over the source of the parties' products.

50. Defendants have intentionally and recklessly disregarded Plaintiff's superior trademark rights to KAVEAH, partly by telling customers and showrooms that KAVEAH has been discontinued and rebranded as TENLY.

51. Defendants' unauthorized use in commerce as alleged above is likely to cause confusion, which violates 15 U.S.C. § 1114.

52. Defendants had actual knowledge of Plaintiff's prior ownership of KAVEAH and marketing efforts using the Clements twins, and Defendants continue to cause confusion in the marketplace willfully.

53. Defendants' actions have caused damage to Plaintiff in an amount to be

CALL & JENSEN EST. 1981

determined at trial.

54. Defendants' actions have irreparably injured Plaintiff. Such injury will continue unless this Court enjoins Defendants from further violating Plaintiff's rights.

**SECOND CAUSE OF ACTION**

**(False Designation of Origin 15 U.S.C. § 1125)**

55. Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as is fully set forth herein.

56. Plaintiff developed and promoted its KAVEAH clothing brand before Defendants launched TENLY. While KAVEAH was still developing its brand through, without limitation, marketing, advertising, and social media, including advertising using the Clements twins, Defendants redirected Plaintiff's business to their TENLY brand.

57. The value of Plaintiff's KAVEAH trademark is significantly diminished because Defendants are telling consumers that KAVEAH has been discontinued and is now Defendants' lower-priced, lower-quality TENLY brand. In other words, Plaintiff has lost its identity, control over its goodwill and reputation, and its ability to expand into new markets or offer new products.

58. Consumers will likely be confused about the origin, source, sponsorship, or affiliation of the parties' products. Defendants' conduct constitutes trademark infringement and false designation of origin in violation of 15 U.S.C. § 1125(a).

59. Defendants had actual knowledge of Plaintiff's prior ownership of KAVEAH and actual knowledge that the KAVEAH brand continues to exist, yet Defendants continue to cause confusion in the marketplace willfully.

60. Defendants' actions have caused damage to Plaintiff in an amount to be determined at trial.

61. Defendants' actions have irreparably injured Plaintiff. Such injury will continue unless this Court enjoins Defendants from further violating Plaintiff's rights.

CALL & JENSEN EST. 1981

**THIRD CAUSE OF ACTION**

**(California Common Law Trademark Infringement/Unfair Competition)**

62. Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as is fully set forth herein.

63. By virtue of the acts complained of herein, Defendants have caused a likelihood of confusion among consumers and the public.

64. California's Unfair Competition Law, Business and Professions Code §§ 17200 et seq. (the "UCL") permits private parties to bring suits to combat "unfair competition," which is defined broadly to include "any unlawful, unfair, or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.)

65. Defendants have engaged in acts of unfair, deceptive, or misleading advertising and have unfairly competed with Plaintiff in violation of the UCL and the common law.

66. Defendants' actions have irreparably injured Plaintiff. Plaintiff has no adequate remedy at law. This injury will continue unless this Court enjoins Defendants from continuing to violate Plaintiff's rights.

67. Defendants' willful acts constitute fraud, oppression, and malice. Accordingly, Plaintiff is entitled to exemplary damages under Civ. Code. § 3294(a).

**FOURTH CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Relations)**

68. Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as is fully set forth herein.

69. Defendants have intentionally interfered with economic relationships between Plaintiff and its customers, including showrooms and direct-to-consumer purchasers of KAVEAH branded goods.




70. Plaintiff, showrooms, and repeat customers were in economic relationships that probably would have resulted in an economic benefit to Plaintiff.

71. Defendants knew of the relationships.

72. Defendants interfered with these relationships by misrepresenting their financial position, making false statements about their inventory, telling customers that KAVEAH had rebranded as TENLY, booking sales on the strength of the KAVEAH brand, and marketing TENLY merchandise with models closely resembling the Clements twins.

73. By engaging in this conduct, intended to disrupt the relationships or knew that disruption of the relationships was certain or substantially certain to occur.

74. Plaintiff was harmed.

75. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

76. Defendants acted with malice, fraud, or oppression as defined in Civil Code section 3294. Defendants knew that they had no right to interfere with Plaintiff's business relationships, and they knew that they had no right to do so using unfair means by, among other things, misrepresenting their financial position, making false statements about their inventory, telling customers that KAVEAH had rebranded as TENLY, booking sales on the strength of the KAVEAH brand, and marketing TENLY merchandise with models closely resembling the Clements twins. As a result, in addition to actual damages, Plaintiff should recover damages to make an example of and to punish Defendants.

**FIFTH CAUSE OF ACTION**

**(Breach of Contract)**

77. Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as is fully set forth herein.

78. Plaintiff and Vimmia entered into a contract.

79. Plaintiff did all, or substantially all, of the things the contract required.

80. Vimmia failed to do something that the contract required it to do.

81. Plaintiff was harmed.

82. Defendants' conduct was a substantial factor in causing Plaintiff's harm.



83. Defendants acted with malice, fraud, or oppression as defined in Civil Code section 3294. Defendants knew that they had no right to interfere with Plaintiff's business relationships, and they knew that they had no right to do so using unfair means by, among other things, misrepresenting their financial position, making false statements about their inventory, telling customers that KAVEAH had rebranded as TENLY, booking sales on the strength of the KAVEAH brand, and marketing TENLY merchandise with models closely resembling the Clements twins. As a result, in addition to actual damages, Plaintiff should recover damages to make an example of and to punish Defendants.

**SIXTH CAUSE OF ACTION**

**(Breach of Covenant of Good Faith and Fair Dealing)**

84. Plaintiff repeats and realleges the allegations of the preceding paragraphs of this Complaint as is fully set forth herein.

85. Every contract or agreement has an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with any other party's right to receive the contract's benefits.

86. Plaintiff and Vimmia entered into a contract.

87. Plaintiff did all, or substantially all, of the things the contract required.

88. Defendants usurped Plaintiff's business by, among other things, misrepresenting their financial position, making false statements about their inventory, telling customers that KAVEAH had rebranded as TENLY, booking sales on the strength of the KAVEAH brand, and marketing TENLY merchandise with models closely resembling the Clements twins.

89. By doing so, Defendants did not act fairly and in good faith.

90. Defendants' conduct harmed Plaintiff.

91. Defendants acted with malice, fraud, or oppression as defined in Civil Code section 3294. Defendants knew that they had no right to interfere with Plaintiff's business relationships, and they knew that they had no right to do so using unfair means

by, among other things, misrepresenting their financial position, making false statements about their inventory, telling customers that KAVEAH had rebranded as TENLY, booking sales on the strength of the KAVEAH brand, and marketing TENLY merchandise with models closely resembling the Clements twins. As a result, in addition to actual damages, Plaintiff should recover damages to make an example of and to punish Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief against Defendants as follows:

1. For compensatory damages, including an amount up to three times the amount of its actual damages under 15 U.S.C. § 1117(a);
2. For incidental and consequential damages in an amount according to proof;
3. For restitution and disgorgement, including as enhanced by the Court as appropriate under 15 U.S.C. § 1117(a);
4. For punitive damages under California Civil Code § 3294;
5. For interest as allowed by law on all sums awarded to Plaintiff;
6. Injunctive relief enjoining Defendants from continued unfair business practices;
7. For costs of suit, including attorneys' fees under 15 U.S.C. § 1117(a), California Code Civ. Proc., § 1021.5 and California Civil Code § 1717; and
8. For any and all relief the Court may deem just and proper.

Dated: January 22, 2025

CALL & JENSEN
A Professional Corporation
Chris C. Scheithauer
Kyle R. Bevan

By: */s/ Kyle Bevan*
Kyle R. Bevan

Attorneys for Plaintiff The Clements Family Trust

CALL & JENSEN EST 1981

**DEMAND FOR JURY TRIAL**

Plaintiff The Clements Family Trust demands a jury trial on all issues so triable.

Dated: January 22, 2025

CALL & JENSEN
A Professional Corporation
Chris C. Scheithauer
Kyle R. Bevan

By: */s/ Kyle Bevan*
Kyle R. Bevan

Attorneys for Plaintiff The Clements Family Trust

CALL & JENSEN EST. 1981